UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-12152-RGS

GEORGE RODRIQUE, II

v.

HEARST COMMUNICATIONS, INC.
and HEARST STATIONS, INC.

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

February 22, 2024

STEARNS, D.J.

George Rodrique, II, brings this discrimination complaint against his former employer, Hearst Stations, Inc., and its indirect parent company, Hearst Communications, Inc.[1]  He asserts that defendants discriminated against him on the basis of religion in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-2(a) (Count I); discriminated against him on the basis of disability in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12111 *et seq.* (Count II), and the Massachusetts anti-discrimination law (Chapter 151B), Mass. Gen. Laws ch.

---

[1] Hearst Stations is a wholly owned subsidiary of Hearst Television Inc., which itself is a wholly owned subsidiary of Hearst Communications.  Hearst Communications in turn is a wholly owned subsidiary of Hearst Corporation.

151B, § 4 (Count III); and coercively interfered with his First Amendment rights in violation of the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, §§ 11H-11I (Count IV).[2] The four claims arise from Rodrique's termination by defendants in the fall of 2021 when he refused to comply with a company-wide COVID-19 vaccination requirement. Defendants now move for summary judgment on all claims. For the following reasons, the court will allow the motion.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

---

[2] The court previously allowed a motion to dismiss Counts I through III as asserted against Hearst Communications. Count IV accordingly is the only remaining claim against it at this stage.

I.   **Hearst Stations**

   **a. Religious Discrimination Claim (Count I)**

Courts assess religious discrimination claims under Title VII using a two-part framework:

> First, a plaintiff must make his prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action. The burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship.

*Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023) (cleaned up). Here, the court's analysis both begins and ends at the first stage.

To establish a prima facie case, a plaintiff must show both that his belief is "religious" in nature and that it is "sincerely held."[3] *Thornton v. Ipsen Biopharms., Inc.*, 2023 WL 7116739, at *3 (D. Mass. Oct. 26, 2023), quoting *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002). "A belief is religious if it 'addresses fundamental and ultimate questions having to do with deep and imponderable matters,' [is] 'comprehensive in nature,'

---

[3] While it is true that a court should not "delve into the merits of a particular religious belief," "[s]ome level of inquiry must . . . be undertaken to assess whether a belief arises from a religion, as opposed to some other set of values or beliefs." *Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *4 (D. Mass. July 20, 2023). The requirement of a bona fide religious belief otherwise loses all meaning. *See id.*

3

consisting of 'a belief-system as opposed to an isolated teaching,' and [is] accompanied by 'certain formal and external signs.'"[4]  *Thornton*, 2023 WL 7116739, at *3, quoting *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 491 (3d Cir. 2017).

Although Rodrique broadly asserts that he objects to ingestion of artificial or man-made substances or substances developed using fetal cells,[5] the record belies the suggestion that his beliefs are quite so sweeping and systematic.  By Rodrique's own account, for example, he regularly takes medications which he views as medically necessary, despite knowing that they are artificial and man-made.  *See, e.g.*, Pl.'s Resp. to Defs.' Statement of Uncontested Facts (Resp. SOF) [Dkt # 58] ¶¶ 61-64, 77.  He also admits to having taken medications and received vaccinations in the past without questioning whether fetal cells were used at any stage during their development.  *See, e.g.*, *id.* ¶¶ 41-42, 63-64, 77.

---

[4] Rodrique objects to this standard, but he does not explain how it substantively differs from his proposed "moral or ethical beliefs as to what is right and wrong" standard.  *See* Pl.'s Opp'n to Mot. for Summ. J. (Opp'n) [Dkt # 57] at 12, quoting 29 C.F.R. § 1605.1.

[5] In his Opposition, Rodrique also references a belief that vaccine manufacturers are a "biblical evil." Opp'n at 6.  He fails, however, to develop this belief in sufficient depth for the court to determine whether it is a religious tenet or is an isolated personal conviction.  The argument accordingly is waived.  *See Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 83 (1st Cir. 2018) (noting that arguments raised "in a perfunctory manner" are waived).

In the end, the court is left with the idiosyncratic assertion that Rodrique objects only to the ingestion of *certain* man-made substances and *certain* medical products developed using fetal cells[6] – ones which he, in his discretion, finds medically unnecessary or unsafe. No reasonable juror could plausibly find this belief "religious." It does not address the type of "fundamental and ultimate questions having to do with deep and imponderable matters" typically found to accompany a religious belief. *Thornton*, 2023 WL 7116739, at *3, quoting *Fallon*, 877 F.3d at 491. Nor can it reasonably be said to encompass some larger "moral or ethical belief[] as to what is right and wrong." *See* Opp'n at 12, quoting 29 C.F.R. § 1605.1. At best, it reflects a personal medical judgment about the necessity of COVID-19 vaccination rigged out with religious verbiage. *See Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 10, 2023) ("[T]he use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion."). The court accordingly enters judgment in favor of Hearst Stations on Count I.

---

[6] Rodrique has not offered any credible medical evidence that the COVID-19 mRNA vaccines at issue *were* in fact developed from fetal cells.

## b. Disability Discrimination Claims (Counts II and III)

The court assesses the validity of Rodrique's disability discrimination claims using the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 104-105 (1st Cir. 2005). Under this paradigm, a plaintiff bears the initial burden to establish a prima facie case of discrimination. *Id.* at 104. If the plaintiff makes the requisite showing, the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason." *Id.* at 105. If the defendant proffers a legitimate, nondiscriminatory reason for its action, the burden of production shifts back to the employee, requiring him to provide evidence that the employer's articulated justification is "mere pretext." *Id.*

To establish a prima facie case of disability discrimination under the ADA or Chapter 151B, Rodrique must show:

> (1) he suffers [or is regarded as suffering] from a disability or handicap, as defined by the ADA and Chapter 151B, that (2) he was nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation, and that (3) [his employer] took an adverse employment action against him because of, in whole or in part, his protected disability.

*Id.* at 104. A disability or handicap is "a physical or mental impairment that substantially limit[s] one or more of [a claimant's] major life activities."

6

*Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 175 (1st Cir. 2003); *see also Connolly v. Woburn Pub. Sch.*, 659 F. Supp. 3d 92, 110 (D. Mass. 2023).

Rodrique trips over the first step. He premises his claim of disability discrimination on the assertion that Hearst Stations perceived him to be "then-presently, if asymptomatically, infected with COVID-19." Opp'n at 14. But no reasonable juror could find on this record that Hearst Stations entertained any such perception. The only evidence cited by Rodrique is the fact that his coworkers wanted him to wear a mask in the office and, during meetings, themselves wore masks in his presence. But the logical conclusion to be drawn from this evidence is that Hearst Stations did *not* definitively perceive Rodrique to have asymptomatic COVID-19 – otherwise, it would not have allowed him to come into the office or attend meetings in the first place, even with such precautions.[7] The court accordingly enters judgment in favor of Hearst Stations on Counts II and III.

### c. MCRA Claim (Count IV)

The MCRA provides a cause of action for any person whose "exercise or enjoyment of rights secured by" the Constitution, federal law, or state law

---

[7] Although not addressed by the parties, the court notes that unvaccinated Hearst employees were subject to weekly COVID-19 testing, the results of which presumably would have definitively dispelled any perception that Rodrique had long-term asymptomatic COVID-19.

has been interfered with "by threats, intimidation, or coercion." Mass. Gen. Laws ch. 12, §§ 11H-I; *see also Kelley v. LaForce*, 288 F.3d 1, 10 (1st Cir. 2002). Hearst Stations levels several attacks against Rodrique's ability to establish a prima facie case under this standard. The court need not delve into these arguments, however, because Hearst Stations also persuasively contends that the claim is preempted by § 301 of the National Labor Relations Act (NLRA), 29 U.S.C. § 185(a).

Rodrique's MCRA claim is premised on Hearst Stations interfering with his exercise of First Amendment rights through the threat of termination. The Massachusetts Supreme Judicial Court has held as a matter of law that "the termination, or threatened termination, of at-will employees is not coercive in the relevant sense under the MCRA." *Nolan v. CN8*, 656 F.3d 71, 77 (1st Cir. 2011). Rodrique's MCRA claim thus is only viable if he was *not* an at-will employee under the terms of the Collective Bargaining Agreement (CBA) between Hearst Stations and its union. The fatal obstacle is this: Section 301 of the NLRA preempts a state law claim "if the resolution of the claim necessitates analysis of, or substantially depends on the meaning of, a collective bargaining agreement." *Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 10 (1st Cir. 1995). As the court is preempted from analyzing the CBA to determine whether Rodrique's employment status is

8

governed by its terms, Rodrique's MCRA claim must be dismissed as preempted.

## II. Hearst Communications

Only the MCRA claim against Hearst Communications remains. Here, too, the court finds that summary judgment is warranted. Rodrique has not offered any evidence either that Hearst Communications was his employer or that it was otherwise involved in the decision to terminate his employment.[8]

## ORDER

For the foregoing reasons, the motion for summary judgment is ALLOWED. The Clerk shall enter judgment against Rodrique and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[8] Although Rodrique states in paragraph 16 of his Response to Defendants' Statement of Uncontested Facts that an attorney from Hearst Communication's Office of General Counsel was notified of the employment action, one paragraph later he identifies the attorney as an employee of Hearst Corporation, Hearst Communication's parent company. Review of the relevant email exchange confirms employment by Hearst Corporation. See Feoktistov Decl. [Dkt # 60], Ex. P at 2.